BOWES, Judge.
Plaintiffs sued defendant truck driver, Allen Ernest, Jr., and his employer, John A. Turcich, Jr. and/or Johnny Turcich, Inc., for injuries and damages incurred in a traffic accident on West Esplanade Avenue in Metairie on February 28, 1977. The case was tried to the district court judge on March 29, and May 11, 1984, and then submitted, with the court ordering the submission of post-trial memoranda. Judgment was rendered in favor of defendants on June 18,1984, and plaintiffs moved for a new trial. On September 21, 1984, the trial court denied plaintiff’s motion for a new trial and, on that same day, issued written reasons for its judgment on the merits.
Plaintiffs now appeal to this court, arguing that the district court judge was manifestly erroneous “in his findings of fact and reasons for judgment.” We affirm the judgment of the district court.
Susan Wear, who was driving her father’s 1971 Lincoln, was involved in a near head-on collision with a 1967 International flatbed tractor-trailer, driven by Allen Ernest, Jr., an employee of the truck’s owner, John A. Turcich, Jr. The case came to trial some seven years after the accident. Consequently, some witnesses could not accurately recall the details of the accident and, at least one witness, David Allen McNish, the investigating officer, was unavailable.
We know that the accident occurred on West Esplanade, which was a two-lane road, running in an east/west direction and intersected by Elmwood Parkway. Mr. Ernest was driving his vehicle in a westerly direction on West Esplanade. Miss Wear drove in a lakebound or northerly direction on Elmwood Parkway and made a right-hand turn onto West Esplanade. By reference to plaintiff’s exhibit No. 8, the diagram of the accident drawn by Deputy McNish, and stipulated to by both plaintiffs and defendants in this action, we know that the impact between the two vehicles occurred some 110 feet from the intersection of West Esplanade and Elmwood. We also know that the impact took place in the eastbound lane of traffic and that the automobile driven by plaintiff was pushed backwards some 50 feet by the truck. The only evidence as to speeds of the vehicles came through the testimony of Mr. Ernest, who claimed to be going 25 miles per hour with a full load of pilings, and by the plaintiff *145 herself, who also claimed to be going 25 miles per hour at the time of the accident.
The plaintiff testified that when she reached the intersection with West Esplanade, she looked both left, right and straight ahead, did not see any vehicles coming from her right and saw no vehicles coming from the other side of Elmwood in her direction. She stated that she saw one or more vehicles coming from the west on West Esplanade, but far enough away that she considered it safe to make a right-hand turn onto West Esplanade.
By referring to plaintiffs exhibit No. 8, we can see that the deputy sheriff measured some 170 feet 9 inches from Elm-wood Parkway to the beginning of the skid marks and lane change of vehicle # 1 (the truck). From this diagram, we can reasonably conclude that at the point of impact between the two vehicles, the truck was not entirely in the eastbound or wrong lane of traffic, and that Mr. Ernest had begun to brake with such force as to leave a skid mark while he was still in his own proper lane of traffic. Mr. Ernest testified that sudden, severe, braking was necessary because “I seen this car pull out ... right in front of me, this automobile hit its brakes. Then I hit mine....” He further stated that when he hit his brakes “the trac [sic] —I don’t know whether the front wheel froze or what, but it pulled me to the left. I continued trying to get the truck back in its own lane, but it just overpowered me.... The next thing I knew, I looked up and that is when Miss Wear and I — collided [...] I never did see her_”
Miss Wear, when questioned as to how the accident occurred, simply stated: “I turned to the right on West Esplanade and started to go towards work. Then a truck came over into my lane and hit my car and started pushing it backwards.”
Only two independent witnesses to the accident were called. The first, Ms. Mo-zelle Landry, testified that she heard the accident but did not see the impact. Neither could she shed any light on the events immediately preceding the collision.
The only other witness, Mrs. Yvonne Lauro, first testified that she did not see the impact. However, under cross-examination, the following colloquy took place:
Q. Mrs. Lauro, do you remember calling my office yesterday and speaking to my office manager, Charlotte Cla-vin?
A. Yes, I do.
[•••]
Q. Did you tell my office manager that you saw the car, the white Continental, make a right hand turn and go into the far lane of travel?
A. I told her it appeared the car went into the far lane and was trying to get back into her lane at the same time the truck driver tried to avoid a head-on collision.
Q. Okay. That is what you told her yesterday?
A. That is what I told her.
Q. You are not changing that testimony now here today, are you?
A. You know, when I saw the two vehicles, that is the way it appeared, that the white car was over in the far lane, and they were both trying to get to the opposite lane.
The trial judge obviously placed great weight upon Mrs. Lauro’s testimony because, in his reasons for judgment, he stated:
Of particular import to this Court was the testimony of Mrs. Yvonne Lauro, who testified that she saw plaintiff make a right-hand turn off of Elmwood onto West Esplanade in the far lane of travel in which Mr. Ernest was operating his truck. Counsel for defendant contends that in order to avoid a head-on collision with plaintiff, Mr. Ernest applied his brakes and turned his wheel to pull out of plaintiffs path. He further argues that Miss Wear attempted to re-enter her proper lane and, in doing so, pulled into the truck’s path and collided with the truck. The Court is in agreement with this contention.
Since the issue in this case concerns a factual determination made by the trier *146 of fact, i.e., that the plaintiff was contribu-torily negligent in causing the accident, we must review the record using the “manifest error” standard of review, as set out by the Louisiana Supreme Court in Canter v. Koehring Company, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978) and their progeny. Under that line of jurisprudence, this court is constrained to give great weight to the factual findings of the trier of fact and is prohibited from substituting our own evaluations and determinations for those made by the trial court. In order for us to set aside those evaluations and determinations, we must find that the trial judge was not merely erroneous in his findings but manifestly erroneous or clearly wrong.
We are unable to logically reach such a conclusion. The testimony and evidence presented certainly furnished a reasonable factual basis for the conclusion reached by the district court.
Accordingly, the judgment is affirmed. Appellants are to bear the costs of this appeal.
AFFIRMED.